# Williams v. The State.

*Indictment for Bigamy.*

1. *Bigamy; what sufficient proof of foreign marriage.*—The confession of a prior marriage, in a sister State, by one indicted for bigamy here, are properly received in evidence against him, without the production of the record of the marriage. By the common law, which is presumed to exist there, consent followed by cohabitation constituting a valid marriage, it does not appear that there is any better evidence of the marriage, and if there were, the court here is without power to compel its production.

2. *Same.*—Repeated admissions deliberately made by the accused, that h

had a wife in Florida and left her there because she refused to come with him to this State, are sufficient evidence of the first marriage to justify conviction, if the jury are satisfied that the admission of the marriage involved an admission of its validity.

3. *Venue; questions as to, how can not be raised.*—Whether there was any or sufficient proof of venue, (where no exception is taken to the "conviction and sentence,") can be raised only by exception to some ruling of the court on the evidence. The refusal of a charge involving a single legal proposition, not in any manner raising the question of proof of venue, does not authorize an inquiry into the sufficiency of the whole evidence, as though the court were considering it on motion for a new trial.

APPEAL from Circuit Court of Butler.

Tried before Hon. JOHN K. HENRY.

The appellant, George Williams, was convicted of bigamy. To prove the second marriage, the State introduced from the record of marriage licenses of the probate court of Butler county, Alabama, a marriage license, authorizing the solemnization of the rites of matrimony between George W. Williams and Sarah E. Byrd, and a certificate of a justice of the peace that he had married the parties on the 9th day of March, 1873.

There was no proof of the first marriage, except the admissions and statements of the accused. He stated to two witnesses in the early part of the year 1873, that "he had a wife in Florida, but when he left there she refused to come, and he left her in Florida." Another witness testified that in hiring the appellant and his brother in November, 1872, he asked how many families there would be, and defendant said "he had been married, but was ready to marry again." In January, 1873, appellant advised with this same witness about marrying, stating "that he had a wife in Florida, but she refused to come with him, and he wanted to marry a Mrs. Byrd." He asked the witness "if he thought there would be any danger in marrying her, and stated that if he was in Florida, he could get a divorce for five dollars."

This was substantially all the evidence.

The appellant's counsel requested the court to charge the jury, in writing, as follows: "If the proof shows defendant confessed to witnesses, in the years 1872 and 1873, that he had a wife in Florida, and then afterwards married a Mrs. Byrd in Alabama, then the State can not convict on these confessions, unless it goes further and proves to the satisfaction of the jury that the marriage of the defendant in Florida was valid, and according to the laws of Florida." The court refused to give this charge, and the defendant excepted.

[Williams v. The State.]

W. A. Duke, for appellant.—This case differs from *Langtry v. The State*. Proof of both confession and cohabitation was made in that case; here, there is only proof of confessions, but no proof of cohabitation. The proof of the second marriage is insufficient. The license and certificate show at most only that George W. Williams and Sarah E. Byrd were married, but they do not show the identity of the Williams there mentioned with the defendant here.—See Roscoe's Crim. Ev. 316. The venue was not proved.— *Peters v. The State*, 30 Ala. 681.

John W. A. Sanford, Attorney General, *contra.—Langtry v. The State*, 30 Ala., is decisive of this case. The objection as to the sufficiency of the proof of the second marriage, and of the *venue* are not questions for this court, unless the matter was raised in the court below and decided there.

BRICKELL, C. J.—The verbal admission of a party in a civil cause, or the verbal confession of the accused in a criminal prosecution, of any fact capable of proof by parol, is admissible in evidence against him. An admission or confession verbally, of a fact of which there is higher and better evidence the party offering it can produce, is not received on the same principle and for the same reasons on which inferior evidence is always rejected. Verbal admissions out of court are not admissible to establish records, deeds, or other writings, of which there is higher and better evidence the party can and ought to produce. The presumption arises that the best evidence is withheld, it may be, for a sinister purpose, and if that presumption is not indulged, it would be dangerous to rest judgment on inferior evidence, when it was apparent to the court higher evidence, on which it could proceed more intelligently and satisfactorily, existed, and was within the power of the party to produce, and the production of which it had jurisdiction to compel. The deed or record, if produced, would possibly contradict the admission or confession, and verbal confession in a criminal case, are always capable of contradiction or explanation. It may be shown they were ignorantly made, or even when intentionally made, are not founded in truth. This is true, also, of verbal admissions, when not operating as an estoppel. A mere verbal admission or confession of matter of law, is not admitted as evidence, for the party may not know the law, and his admission of it may be exceedingly erroneous. The court must determine what is the law, unaided by such admission or confession.

These are the only limitations on the admissibility of

admissions or confessions, which the current of authority recognizes. The vigilance of the court in inquiring in criminal prosecutions whether the confession of the accused— and by confession is intended only that which is expressed by admission when applied to a civil cause—is voluntary, must always be exercised. If it appears to have been voluntary, it is evidence the jury must consider and weigh, and within their exclusive province it lies to determine its sufficiency. They should be, and doubtless are, always instructed, that the value of a confession depends in a great degree on other evidence corroborating it, and that it should be carefully and cautiously weighed, because, like the repetition of every verbal statement, it is subject to much infirmity. The party making it may have been misunderstood, or he may not have clearly expressed himself, or his words may bear to another a significance different from that he intended; and besides, it is a species of evidence easy of fabrication, and difficult of disproof. When, however, the confession has been voluntarily made, is precisely identified, and has been repeated substantially at different times and to different persons, in the absence of all motive to speak otherwise than truthfully, it is evidence the court never hesitate to receive, and on which the most intelligent, thoughtful and conscientious juror will not hesitate to pronounce a verdict. The degree of the crime is not material; it may be the highest, involving a forfeiture of life, or it may be the lowest, followed by a mere pecuniary amercement, insignificant in amount.

To this general principle, an exception is supposed to obtain in a prosecution for bigamy. To constitute the offense, it is necessary to allege and prove two distinct marriages, and that at the time of the second marriage the accused had a former husband or wife alive.—3 Green. Ev. § 204. The former marriage, it has been said, must be proved by the production of the record of the marriage, or by a witness present at its solemnization or ceremony. The exception, where it is recognized, rests on the expressions of Lord Mansfield, in *Morris v. Miller*, 4 Burr. 2087. The action was for criminal conversation, and of consequence the admissibility or sufficiency of evidence in that particular form of action only was directly presented for adjudication. It is true, he says, "in a prosecution for bigamy, a marriage in fact must be proved," but he says, also, "we do not at present define what may or may not be evidence of a marriage in fact." The declarations of the defendant in the case were rejected, as tending only to prove a marriage by reputation, and not a marriage in fact. Proceeding on these expressions

of Lord Mansfield, it was said by Ormond, J., in *Ford v. Ford*, 4 Ala. 144: "Upon an indictment for bigamy, and in the action for criminal conversation, the fact of the former marriage must be proved by the production of the record of the marriage, or by a witness present at the ceremony." The case before the court was a bill in equity for the assignment of dower, and in such a suit it is only necessary for the demandant to show an actual marriage, by any competent evidence, satisfying the court of the fact. No particular character of evidence, such as the registry of the marriage, or the production of a witness present at the ceremony, is necessary.—*Martin v. Martin*, 22 Ala. 86. In *Langtry v. State*, 30 Ala. 536, the question was directly presented, whether, on a prosecution for bigamy, the first marriage was capable of proof by the declarations of the accused, and cohabitation. The court declaring what was said in *Ford v. Ford, supra*, a *dictum*, unsupported except by the *dictum* of Lord Mansfield, in *Morris v. Miller, supra*, or cases resting on it, held such evidence admissible, and if full and satisfactory, sufficient to support a conviction. The first marriage, in the case of *Langtry v. State*, was, if it existed, probably a domestic, not a foreign marriage. If in any case record evidence of a marriage can be presumed to exist, and within the power of the State to produce, the presumption would be the more readily made as to a domestic marriage. It cannot be solemnized without a license issuing from the office of a public officer of the State, to which it must be returned, with the certificate of the officer or minister solemnizing it. The license and the certificate are recorded, and a certified copy of the registry, is presumptive evidence of the fact of marriage.—R. C. § 2341. The record is always open to public inspection, and any one is entitled to a certified copy of it. Of a foreign marriage, there cannot be record evidence, within the power of the State to produce. If such evidence exists, it is without the State, and beyond the jurisdiction of the court. There would be a reason, therefore, for requiring record evidence of a marriage in this State, not existing when the marriage occurred in a foreign state. In England, it has been held on an indictment for bigamy, the first marriage having occurred in New York, it was competent to prove it by the admissions of the accused, and it was for the jury to determine whether the admission was of a marriage valid according to the law of New York.—*Reg. v. Simmonton*, 1 Cow. & Kir. 164, (S. C. 47 Eng. Com. Law 164). In Truman's case, cited 1 East's Crown Law, 470, the first marriage occurred in Scotland, and was proved by cohabitation, the declarations of the accused, and a copy of proceedings had against him

[Williams v. The State.]

in a court of Scotland for having contracted such marriage. A conviction on the evidence was supported by all the judges (except two who were absent), some of them expressing the opinion the acknowledgment of the accused would have been sufficient evidence. Mr. East, in his observations upon the case, says: "With respect to such evidence of a bare acknowledgment in this case, it may be difficult to say that it is not evidence to go to the jury, like the acknowledgment of any other matter *en pais*, where it is made by a party to his own prejudice at the time." It is difficult to see any good reason for doubting the admissibility of an admission of the fact of marriage or its sufficiency, when it is deliberate and precisely identified. Such evidence would be received if it was sought to charge the husband with the engagements of the supposed wife; or, after his death, when the legitimacy of his children, or the descent and inheritance of his estate, were involved. Then, even evidence inferior to it, inscriptions on tombstones, family registers, recognition, or reputation, will be received. When the legitimacy of children and their right to inherit is in issue, the validity of marriage is as directly involved as it is in a prosecution for bigamy. That the one may be a civil action and the other is a criminal prosecution, affects the admissibility of the declaration only in requiring evidence in the latter case satisfactory to the court that it was voluntary. Any fact capable of proof by parol, in a civil cause, is equally capable of proof by evidence of that character in a criminal prosecution.

In the case before us, the evidence found in the record is of the repeated admissions of the accused that he had a wife in Florida, and that he left her there because she refused to come with him to this state. These admissions, it is apparent, were not carelessly made, but were made while the second marriage was in contemplation, and in one instance when soliciting advice as to the propriety of the second marriage. If he indulged a doubt of the validity of his first marriage, he does not intimate it in any of the several conversations in which he admits it. He certainly knew whether he had been married or not, and whether that marriage was valid or not. It is but a fair presumption, if the marriage had been invalid, he would have so stated. According to his admissions, it was valid, and the wife had not kept her vow to live with him by refusing to come here with him. In *Cayford's case*, 7 Green. 57, C. J. Mellen, after a thorough examination of the authorities, held, on an indictment for lewd cohabitation, the prisoner's confession of the fact of marriage in another State or country was sufficient; that from

such confession the validity of the marriage ought to be presumed. Not doubting that a deliberate confession of marriage in the State would be sufficient evidence of the fact, he says: " Cases of foreign marriage stand on different grounds from domestic. The latter may be generally proved with ease by record evidence, or by the oath of some person or persons who were present at the solemnization, they being within reach of the court's process. Not so in cases of marriages in a foreign country, or even in another State of the Union." So in the case of *Warner v. Commonwealth,* 2 Va. Cases, the fact of marriage in Pennsylvania was held properly proved by the declarations of the accused. In *State v. Hilton,* 3 Rich. (Law) 434, the declarations of the accused were deemed sufficient to establish the first marriage had in North Carolina. Such is the general line of decision in this country.—3 Whart. Am. Cr. Law, §§ 2631–4.

The presumption is that the common law prevails in our sister States. The weight of authority is in favor of the proposition that at common·law, the consent of the parties, followed by cohabitation, is a valid marriage.—1 Bish. Mar. & Div., §§ 289–292; *Campbell v. Gullatt,* 43 Ala. 57. The admission of the accused of the fact of marriage in Florida, was an admission of a fact which may rest only in parol, of the fact that he and the woman who refused to accompany him to this State had consented to live together, and had lived together as man and wife. It was not the confession of a fact of which there was necessarily higher evidence, and if there was such evidence, it was without the State, and not in the power of the prosecution to produce.

The charge requested was properly refused. The admissions were competent evidence, without any other evidence that the marriage was valid according to the laws of Florida. It was for the jury to determine whether the admissions did not involve an admission of the validity of the marriage. If the jury were satisfied they did, no other evidence of its validity was necessary.

The only exception reserved was to the refusal of the charge requested by the appellant; no exception was taken " to the sentence and conviction," as in *Frank v. State,* 40 Ala. 9. Whether there was evidence of the venue, or whether the evidence in any respect was insufficient for a conviction, can only be presented by some exception to the rulings of the court on the evidence. A charge requested and refused, presenting a single legal proposition, does not authorize an inquiry into the sufficiency of the whole evidence, as if we were determining an application for a new trial, because of the insufficiency of the evidence to support the verdict.

The judgment must be affirmed.