166 So. 602

**STATE ex rel. HOLCOMBE, Sheriff, v.
STONE, County Treasurer.**

I Div. 891.

Supreme Court of Alabama.

March 12, 1936.

Gordon, Edington & Leigh, of Mobile,
for appellee.

See, also, 26 Ala.App. 226, 157 So. 452.

W. C. Taylor and Outlaw & Seale, all of
Mobile, for appellant.

KNIGHT, Justice.

Relator, R. L. Holcombe, sheriff of Mobile county, filed his petition in the circuit court of Mobile county, praying for writ of mandamus to require Hon. George E. Stone, as treasurer of Mobile county, to register for payment certain claims, aggregating $3,555.65, for amounts alleged to be due and owing to relator, as fees allowed by law to him as sheriff, for services in the

seizure and destruction of prohibited liquors in the justice court of Joseph F. Cabler. The said Cabler was a justice of the peace in and for precinct No. 27, Mobile county, Ala.

The treasurer had declined to either register, or to pay, the claims presented in the petition addressed to the judges of the circuit court. To the petition as filed, Mr. Stone, as such treasurer, filed many grounds of demurrer. On submission on these demurrers, the court sustained the same, and this appeal followed.

■■ It is not to be doubted that an officer demanding the payment of fees for services rendered must point to some clear and definite provision of the law which authorizes the charge, and, of course, statutes giving costs and fees will not be extended beyond their letter. Troup v. Morgan County, 109 Ala. 162, 19 So. 503; Torbert v. Hale County, 131 Ala. 143, 30 So. 453; McElderry v. Abercrombie, Superintendent of Education, 213 Ala. 289, 104 So. 671. As a corollary to this rule, it may be said that, when there is a law enjoining the service, and providing the compensation to be paid therefor, and naming the official whose duty it is to make the payment, a clear ministerial duty arises on the part of the latter, which he may be required to perform, if need be, by mandamus.

■ The rule is established in this jurisdiction by a long line of decisions that to entitle one to the extraordinary writ of mandamus there must be (a) a clear legal right in the petitioner to the order sought, (b) there must be an imperative duty upon the respondent in the petition for mandamus to perform his duty, and which he has refused to do, (c) there must not be any other adequate remedy open to petitioner, and (d) the jurisdiction of the court must be duly invoked by proper petition. Blackwood v. Maryland Casualty Co., 227 Ala. 343, 150 So. 180; Woodward Iron Co. v. Dean, 217 Ala. 530, 117 So. 52, 60 A.L.R. 536; Ex parte Wright, 225 Ala. 220, 142 So. 672; Ex parte Jackson, 212 Ala. 496, 103 So. 558.

From this rule it would necessarily follow that, where a clear legal duty is enjoined upon an officer to do a ministerial act, which he refuses to do to the hurt of another, and there is no other adequate remedy provided by law, the aggrieved party may, by proper petition and proof, coerce action by the one in default.

So, the real question in this case to be determined is: Does the petition, with its exhibits, show a clear legal right on the part of the petitioner to the fees in question? If so, it would follow that the trial court committed reversible error in sustaining the demurrer to the appellant's petition.

■ The principal argument here advanced to support the ruling of the lower court, in sustaining respondent's demurrer, is based upon the supposed defect in the petition growing out of its failure to show, by proper averment, that the writs of search and seizure were issued by an officer who had the jurisdiction to issue the same.

It is insisted that, by a local law passed by the Legislature at its 1900–01 session (Acts 1900–01, p. 794), criminal and quasi criminal jurisdiction was taken away from justices of the peace within the then limits of the city of Mobile, and for five miles beyond the then limits of said city; that the petition fails to show that the justice of the peace who issued the warrants had any criminal or quasi criminal jurisdiction; and that, for aught averred to the contrary, the seizure and searches were made in the city of Mobile, or within five miles of corporate limits of said city.

It is our view that there is no merit in this contention of the appellee.

Assuming that the Local Act of 1898 (Loc.Acts 1898–99, p. 1626), as well as the amendatory Act of 1900–01, were both valid and in no wise offensive to any provision of the Constitution (and we are free to say that we see no constitutional objection to either of said acts), yet, in our opinion, these acts can exert no influence in the determination of the questions presented by this record. We may well assume the constitutionality of each of the acts.

The Legislature of Alabama at its 1915 session (Gen.Acts 1915, p. 8) passed an act, the title of which was: "To further suppress the evils of intemperance and to secure obedience to and enforcement of, and to prevent the evasion of, the laws of the state for the promotion of temperance and for the prohibition of the manufacture of and traffic in or unlawful disposition of prohibited liquors and beverages; to provide for the abatement of liquor nuisances and the seizure and destruction of forfeited liquors and beverages, and to prescribe the procedure in such cases."

The thirty-eighth section of said act provides: "That all laws and parts of laws, *general, local* and *special,* in conflict with the provisions of this act be, and the same are, hereby repealed, but no such repeal or any repeal provided for by this section shall effect any existing right, remedy, defense or liability incurred, nor any action or prosecution, civil or criminal, already commenced or which may be hereafter commenced for any offense already committed, or to enforce any right, penalty or punishment under any repealed law, and as to all such cases the laws in force at the time of the enactment and taking effect of this statute shall continue in force."

Subsection 1 of section 22 (corresponding to section 4742 of the Code) reads: "The warrant may be issued by *justices of the peace,* judges of the county court, or any inferior court possessing the *civil* or *criminal jurisdiction* of justices of the peace, by recorders or other municipal judges of towns or cities by whatever name called; and the word magistrate hereinafter employed shall include each of the officers authorized to issue warrants; also by the judges named in subdivision 14." (Italics supplied.)

It was the evident purpose of the lawmakers, in the passage of the act of 1915, to provide a body of laws that would accomplish the results intended by them, namely, the suppression of the evils of intemperance, and to that end they proceeded to confer upon certain named officers of the several precincts, and counties of the state, jurisdiction to enforce this law. Among the officers designated are justices of the peace. Wherever there was a justice of the peace, whether theretofore shorn of criminal jurisdiction or not, by this act jurisdiction was conferred upon him to issue warrants provided for in the act. It was evidently not the purpose of the statute to confine that jurisdiction conferred by the act to only such officers as possessed criminal jurisdiction. This is made manifest by the fact that jurisdiction is conferred upon judges of inferior courts, possessing either civil or criminal jurisdiction. A construction that the act only conferred jurisdiction upon such justices who had criminal jurisdiction narrows the act in this respect unduly. Certain it is that, without the jurisdiction conferred by this act, no justice of the peace, whether possessed of the jurisdiction conferred by sections 3846 and 3847, or not, would have jurisdiction to do many of the acts which he is empowered to do by the said act of 1915. The proceedings authorized to be had after the issuance of the warrants are proceedings in rem, and there could be no valid reason to confine the exercise of this jurisdiction to only such justices of the peace who possessed criminal jurisdiction.

It is insisted by appellee that the case of State v. Spurlock, 159 Ala. 122, 48 So. 849, construing the Local Act of 1900–01, is decisive of the proposition that it was not the legislative mind by adopting the act of 1915 (Code, § 4742) to confer jurisdiction upon justices of the peace who had been shorn of criminal and quasi criminal jurisdiction. We do not think so.

In the act of 1915, the Legislature was dealing with one subject—the suppression of intemperance—and to better or more effectively accomplish the purpose in mind, the lawmakers set up a plan and procedure which they thought would accomplish the end in view. To accomplish this purpose, jurisdiction was conferred upon justices of the peace to issue warrants, such warrants not warrants of arrest necessarily, and they proceeded to repeal all laws in conflict with the act. This necessarily included the repeal of the Local Act of 1898–99, and the amendatory Act of 1900–01, in so far as it was in conflict with the act of 1915.

We are of the opinion that by the General Act of 1915, all justices of the peace of Mobile county were authorized and empowered to issue the warrants contemplated by section 22 of the act, and now codified as sections 4741 and 4742 of the Code.

We are not impressed that there is merit in any other ground of demurrer interposed to the petition.

It follows, therefore, that the judgment of the circuit court in sustaining the demurrers to the petition must be reversed, and the cause remanded.

Reversed and remanded.

All the justices concur.